## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHAD ASHLEY BABCOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-cv-1110-MPT |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM[1]

Presently before the court are plaintiff's motion for summary judgment and defendant's cross motion for summary judgment.[2] Plaintiff seeks an entry of judgment under sentence four of 42 U.S.C. §§ 405(g), 1383(c)(3), reversing the Commissioner's final decision and for further administrative proceedings.[3] For the following reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

## I. BACKGROUND

This action arises from the denial of Chad Ashley Babcock's ("plaintiff") claims for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act (the "Act").[4] Plaintiff

---

[1] Following the parties' consent to proceed before a United States Magistrate Judge to be selected by the court, the case was referred to this judge to conduct all proceedings and the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73 on April 1, 2022. *See* D.I. 18; D.I. 19.

[2] D.I. 11; D.I. 13. Briefing is found at D.I. 12, D.I. 14, and D.I. 15.

[3] D.I. 12 at 9.

[4] The court refers to the record from the administrative proceeding (D.I. 9) as "Tr." The record is consecutively paginated and is referred to as "Tr. at ___."

protectively filed his benefits application for DIB on July 15, 2019, and for SSI on July 17, 2019.[5]  Both applications alleged disability beginning December 2, 2018[6] due to the following conditions:  a back problem, heart problem, prostate problem, blood clots and high blood pressure.[7]  His claim was denied initially on November 27, 2019, and again upon reconsideration on May 28, 2020.[8]  Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ").[9]

The ALJ held a hearing on January 25, 2021, at which he heard testimony from plaintiff and a vocational expert ("VE").[10]  The ALJ issued a decision on March 12, 2021, concluding plaintiff was not under a disability within the meaning of the Act for the relevant period.[11]  The ALJ found that, while plaintiff could not perform his past work, he could perform a limited range of light work available in the national economy.[12]

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review the decision, making it a final decision reviewable by this court.[13]  Plaintiff filed this action on July 30, 2021.[14]

---

[5] Tr. at 12, 229-39, 247-58.

[6] *Id.* at 12.

[7] *Id.* at 12; 317.

[8] *Id.* at 12, 64-93, 98-118.

[9] *Id.* at 12, 119-20.

[10] *Id.* at 12, 28-63.  The hearing was held telephonically "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." *Id.* at 12.

[11] *Id.* at 12-20.

[12] *Id.* at 18-19.

[13] *Id.* at 1-6.

[14] D.I. 2.

## II.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[15]  If no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[16]

This standard does not change merely because there are cross-motions for summary judgment.[17]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[18]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[19]

### B.    Court's Review of the ALJ's Findings

The Commissioner must follow a five-step sequential analysis when determining if an individual is disabled.[20]  The Commissioner must determine whether the applicant: (1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3)

---

[15] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).
[16] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (citing FED. R. CIV. P. 56(c)).
[17] *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).
[18] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[19] *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990).
[20] 20 C.F.R. § 404.1520.

suffers from an impairment that meets a listing; (4) has the residual functional capacity ("RFC") to perform past relevant work; and (5) can perform any other work existing in significant numbers in the national economy.[21]

A reviewing court is limited to determining whether the Commissioner's factual findings are supported by "substantial evidence."[22] "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[23] In reviewing whether substantial evidence supports the Commissioner's findings, the court may not "re-weigh the evidence or impose [its] own factual determinations."[24] The reviewing court must defer to the ALJ and affirm the Commissioner's decision, even if it would have decided the factual inquiry differently, so long as substantial evidence supports the decision.[25]

The reviewing court must also review the ALJ's decision to determine whether the correct legal standards were applied.[26] The court's review of legal issues is plenary.[27]

## III.   DISCUSSION

The ALJ found plaintiff had the following severe impairments:  lumbar degenerative disc disease, cardiomyopathy, and venous insufficiency.[28] He found

---

[21] *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520).

[22] 42 U.S.C. § 405(g).

[23] *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988).

[24] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

[25] *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

[26] *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

[27] *Id.*

[28] Tr. at 15.

plaintiff's seizures, history of alcohol abuse, and opiod abuse disorder were not "severe" impairments as defined in the regulations.[29]  The ALJ posed the following hypothetical question to the VE:

> [A]ssume an individual with Claimant's age, education, and work history, who can perform work at the light exertional level, who can . . . occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds, who can frequently balance, and occasionally stoop, kneel, crouch, and crawl, who can have occasional exposure to extreme cold, vibration, and no exposure to hazards, such as moving machinery and unprotected heights.  Could this individual perform any of the Claimant's past work?[30]

The VE responded the hypothetical person could not.[31]  The ALJ then asked if there would be any jobs that person could perform.[32]  The VE responded that such a person would able to perform jobs at the light exertional level including:  a bander of paper goods, garment bagger, and sorter of paper goods.[33]

Plaintiff's counsel then posed a question to the VE regarding what effect absences of two or more days per month due to interference from symptoms would have on the hypothetical claimant's jobs.[34]  The VE answered "that person would not be able to engage in competitive employment.  One can miss one day per month and still maintain employment, but anything greater than that would preclude . . . competitive work."[35]

In his decision, the ALJ stated:

---

[29] *Id.* at 60.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at 60-61.
[34] *Id.* at 62.
[35] *Id.*

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; have occasional exposure to extreme cold and vibration; and no exposure to hazards such as moving machinery and unprotected heights.[36]

* * * * *

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.[37]

The ALJ relied upon the VE's assessment in his final determination and concluded, considering plaintiff's age, education, work experience, and RFC, he was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, such as table assembler of paper goods, garment bagger, and inserted or paper goods.[38]

Plaintiff's argument rests solely on his contention that the ALJ's RFC determinations are unsupported by substantial evidence as he failed to properly evaluate the opinion evidence of his treating physician, Joseph F. Karnish, D.O. ("Dr. Karnish").[39]  Due to this purported failure, plaintiff maintains the ALJ did not create a logical bridge between the evidence and the RFC,[40] and requests his case be remanded for a *de novo* hearing and further consideration of the evidence.

---

[36] *Id.* at 15-16.
[37] *Id.* at 16.
[38] *Id.* at 19.
[39] D.I. 12 at 3-9.
[40] *Id.* at 5, 7.

Defendant asserts the ALJ's Decision is consistent with the statutory and regulatory scheme for evaluating disability claims.[41]  Defendant argues the ALJ properly evaluated Dr. Karnish' s opinion and that substantial evidence supports his RFC determination for a range of light work.[42]

A plaintiff's RFC is his maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.[43]  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week, or another similar schedule.[44]  The RFC assessment must include a discussion of the individual's abilities.[45]  "[T]he ALJ's finding of [RFC] must be accompanied by a clear and satisfactory explanation of the basis on which it rests."[46]

"The record before the ALJ is the touchstone for determining which limitations should be included in an RFC assessment."[47]  The ALJ must consider all the evidence before him when making his RFC determination and must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.[48]

### ALJ's Consideration of Dr. Karnish's Opinion

Plaintiff argues the ALJ's physical RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion evidence of Dr.

---

[41] D.I. 14 at 6-7.
[42] *Id.* at 7-14.
[43] Tr. at 14.
[44] *Id.*
[45] *Id.*; 20 C.F.R. §§ 404.1545, 416.945; *Hartranft*, 181 F.3d at 359 n.1.
[46] *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).
[47] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007).
[48] *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

Karnish.[49]  Specifically, plaintiff asserts that the ALJ failed to adequately explain his findings as required by 20 C.F.R. §§ 404.1520c, the statutory scheme under which the Social Security Administration evaluates medical opinion evidence in disability claims filed after March 27, 2017.[50]  These regulations list multiple factors to be considered in evaluating the persuasiveness of that evidence, and state:

> [t]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.[51]

With regard to supportability, an opinion will be considered more persuasive when "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s) . . . ."[52]  Turning to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[53]

### A.    Supportability

Plaintiff states "[i]n essence, the ALJ did not address supportability here at all. He cited no specific evidence from any of Dr. Karnish's records and failed to create a logical bridge between the evidence and his resulting rejection of the opinion

---

[49] D.I. 12 at 3-9.
[50] *Id.* at 3-4.
[51] 20 C.F.R §§ 404.1520c(b)(2).
[52] 20 C.F.R §§ 404.1520c(1).
[53] 20 C.F.R §§ 404.1520c(2).

evidence."[54]

Plaintiff asserts that the relevant supporting evidence for Dr. Karnish's conclusions is found in his treatment notes.[55]  He lists multiple examples from those notes that "are supportive of the limitations provided by Dr. Karnish" and concludes "the ALJ provided no rationale as to why the [sic] Dr. Karnish's opinion is not supported by his own treatment notes."[56]

In response, defendant notes the regulations require the ALJ "need only explain how he considered" the supportability and consistency factors, and that he indeed "evaluated Dr. Karnish's opinion in accordance with the applicable regulations and provided reasons, supported by the record evidence, for his assessment of his persuasiveness."[57]  Specifically, defendant asserts the ALJ's reasoning cited to the lack of explanations Dr. Karnish provided for his conclusions about plaintiff's physical limitations.[58]  Defendant points to the completed questionnaire submitted by Dr. Karnish as merely "identify[ing] Plaintiff's diagnoses and alleged symptoms" without "any indication what medical findings or reasons supported the limitations he assessed."[59]  Defendant states "[i]t is well-settled that 'checkbox' and 'fill in a blank' forms like the one Dr. Karnish completed are 'weak evidence at best'"[60] when they are "not accompanied by a thorough written report."[61]

---

[54] D.I 12 at 5.
[55] *Id.*
[56] *Id.* at 5-6.
[57] D.I. 14 at 7-9.
[58] *Id.* at 9.
[59] *Id.*
[60] *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d. Cir. 1986)).
[61] *Id.* (quoting *Brewster v. Heckler*, 786 F.2d 581, 585 (3d. Cir. 1986)).

9

Rather than providing "no rationale" as plaintiff argues, the court finds the ALJ clearly stated the reason for finding Dr. Karnish's opinion unpersuasive for lack of supportability as the absence of explanation this doctor's in the record.[62] "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."[63] Therefore, by articulating a legitimate reason for his finding, the ALJ's determination on the supportability factor is supported by substantial evidence.

### B. Consistency

Plaintiff alleges "the ALJ also failed to provide a good explanation concerning consistency between Dr. Karnish's opinion and the remainder of the record."[64] Plaintiff states that, while the ALJ found Dr. Karnish's opinion to be inconsistent with the Disability Determination Services ("DDS") evaluations, "the analysis of the ALJ should not stop with the DDS opinions"[65] and that:

> [t]he ALJ is required to discuss how the opinion evidence either is consistent with the record *as a whole* or if it is not consistent with the record *as a whole*. The ALJ stops with DDS evaluations, and even then does not provide a good rationale as to why the DDS evaluations are inconsistent with Dr. Karnish's opinion.[66]

Contrary to plaintiff's assertion, the court finds the ALJ's analysis did not "stop with the DDS opinions" and did consider the record as a whole. Specifically, in explaining why he found the DDS opinions persuasive in support of his RFC finding, the

---

[62] Tr. at 17.
[63] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007).
[64] D.I. 12 at 6.
[65] *Id.*
[66] *Id.* at 7 (emphasis in original).

ALJ found those opinions to be consistent with other evidence in the record, including numerous medical findings and plaintiff's own report of improvement post lumbar surgery.[67]

Plaintiff further alleges that the ALJ failed to consider probative evidence of his impairment, specifically "findings of edema throughout Dr. Karnish's records and the frequent hospitalizations due to Plaintiff's physical impairments," as well as plaintiff's own testimony.[68] Plaintiff maintains that, in not adequately considering this evidence, the ALJ "picks and chooses whatever evidence would tend to support disability while ignoring the evidence that would tend to support Plaintiff's testimony and the opinion of Dr. Karnish."[69] In doing so, plaintiff asserts, the ALJ "has not met his responsibilities to develop the record," leaving this court "without the ability to provide a meaningful review" and therefore requiring remand.[70]

An ALJ's failure to cite specific evidence, however, does not establish that the ALJ failed to consider it.[71] In addition, the court notes an ALJ is not required to "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records."[72] Further, a "written evaluation of every piece of evidence is not required," so long as the ALJ, at some minimum level, articulates his analysis of particular evidence.[73] Indeed, the Third Circuit has not required the ALJ to discuss or

---

[67] Tr. at 16-17.

[68] D.I. 12 at 7-8.

[69] *Id.* at 8.

[70] *Id.*

[71] *See, e.g.*, *Robinson v. Colvin*, 137 F. Supp.3d 630, 645 (D. Del. 2015) (citing *Black v. Apfel*, 143 F. 3d 383, 386 (8th Cir. 1998)).

[72] *See Fargnoli* 247 F.3d at 42.

[73] *Phillips v. Barnhart*, 91 F. App'x 775, 280 n.7 (3d Cir. 2004).

refer to every piece of evidence on the record, so long as the reviewing court can discern the basis of the decision.[74]

Viewing the record as a whole, the court finds the ALJ's decision is supported by substantial evidence.  Furthermore, rather than the ALJ having "ingore[d]" evidence unfavorable to plaintiff, defendant notes an ALJ "is not required to use particular language or adhere to a particular format" in order to render a "decision 'read as a whole' [that is] capable of providing meaningful judicial review."[75]  Because the ALJ discussed the inconsistencies between Dr. Karnish's opinion and the DDS examinations, and explained how the DDS opinions were, in contrast, consistent with the record, the court finds sufficient information to conduct a meaningful review and conclude the ALJ's finding is supported by substantial evidence.

## IV.    CONCLUSION

Therefore, plaintiff's Motion for Summary Judgment (D.I. 11) is DENIED, and defendant's Cross-Motion for Summary Judgment (D.I. 13) is GRANTED.

An order consistent with the findings in this Memorandum shall follow.


October 20, 2022                                    /s/  Mary Pat Thynge
                                              CHIEF U.S. MAGISTRATE JUDGE

---

[74] *See Fargnoli* 247 F.3d at 42 (citing *Cotter v. Harris*, 642 F. 2d 700, 704 (3d. Cir. 1981)).
[75] D.I. 14 at 14.